# AGNIFILO
# INTRATER

July 9, 2024

<u>Via E-Mail</u>
The Honorable Katharine Hayden
United States District Judge
Martin Luther King Building
50 Walnut Street Room 4015
Newark, New Jersey 07101

      Re:    <u>United States v. Lisa Curty</u>, 20-CR-00817 (KSH)

Dear Judge Hayden:

      We represent Lisa Curty in the above-captioned case and write to respectfully request, without objection from the Government, that the Court compassionately release Ms. Curty from custody, or in the alternative, modify Ms. Curty's sentence to reduce her term of imprisonment from a year and a day to six months and allow the remainder of her sentence to be served on home confinement. Ms. Curty's health is suffering due to her continued imprisonment, and the Bureau of Prisons ("BOP") has shown, both at the medical center where she was incarcerated, and at the halfway house where she is living now, that they are unable to provide the proper care for Ms. Curty's ███████.

      Therefore, we have two applications: (1) first, a motion under 18 U.S.C. § 3582(c)(1)(A), for an order granting Ms. Curty "compassionate release", which allows the Court to release Ms. Curty from custody immediately; or, in the alternative (2), to modify Ms. Curty's sentence so that she can serve the maximum portion of the prison sentence on home confinement, by operation of the Second Chance Act, codified at 18 U.S.C. § 3624(c). In that case, we respectfully request that the Court order Ms. Curty release so that her home confinement with monitoring can begin. As noted, the Government has stated it does not object to either of these applications.

## A. **Relevant Background**

      On December 18, 2023, Ms. Curty was sentenced to a year and a day in prison following her conviction for attempt and conspiracy to commit mail fraud. (*See* ECF 40, Judgment.) At the time of sentencing, the Court recommended that (1) Ms. Curty be housed at a BOP facility close her home (Danbury), (*id.*), and (2) the Court "strongly recommend[ed] designation to a minimum-security prison camp" to the BOP. (*Id.*) After first designating her to the minimum-security camp at Danbury, close to her home, BOP later changed her designation to FMC Carswell, in Texas, where she surrendered on February 26, 2024. The reason for this designation was that FMC Carswell was unfortunately the only BOP facility with the capabilities to ensure ████████

      However, as detailed below, FMC Carswell was unable to manage ████████ ████████ After four months imprisoned at FMC Carswell, she was released to RRM Philadelphia, the halfway house in Newark two weeks ago. Though Ms. Curty is grateful, and

# AGNIFILO
# INTRATER

frankly ecstatic, to see her children again after four months of separation, this facility has been equally unable to manage Ms. Curty's diabetes.

**B. Ms. Curty's Imprisonment at Carswell and RRM Philadelphia**

Unfortunately, despite repeated assurances from BOP prior to her surrendering, Ms. Curty faced significant medical issues throughout her four months at FMC Carswell.



AGNIFILO
INTRATER



**C. Legal Standard**

The "compassionate release" provision of 18 U.S.C. § 3582(c) provides the following:

The [sentencing] court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—

>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

# AGNIFILO
# INTRATER

---

18 U.S.C. § 3582(c)(1)(A). Under the Sentencing Commission's policy statement on compassionate release, the sentencing court must also find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### D. Argument

1. The Exhaustion Requirement Should Be Excused

This Court should excuse Ms. Curty's failure to exhaust her administrative remedies and consider the present motion. As an initial matter, § 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional bar to this Court's consideration of Ms. Curty's request for compassionate release. "If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as in character." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019) (brackets and internal quotation marks omitted). Section 3582(c)(1)(A) "lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements." *See Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (concerning the Prison Litigation Reform Act); *see also United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) (finding that § 3582(c) is not "phrased in jurisdictional terms" and thus "the statutory indicators point against jurisdictional treatment").

Although exhaustion is apparently mandated by § 3582(c)(1)(A), Ms. Curty satisfies each of the three exceptions to the exhaustion requirement. Just in 2019, the Second Circuit stated the following in *Washington v. Barr*:

> Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute. The Supreme Court itself [in *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)] has recognized exceptions to the exhaustion requirement under "three broad sets of circumstances."

First, exhaustion may be unnecessary where it would be futile…

> [Second,] exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief…

> Finally, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice. In particular, "an unreasonable or indefinite timeframe for administrative action" may sufficiently prejudice plaintiffs to justify a federal court in taking a case prior to the complete exhaustion of administrative remedies. Not every delay will be sufficiently severe to justify waiver, however. Although, in most cases, "respondents would clearly prefer an immediate appeal rather than the often lengthy administrative review process," a mere preference for speedy resolution is not enough. Threatened or impending irreparable injury flowing from delay incident to following the prescribed administrative procedure militates in favor of waiving

**AGNIFILO
INTRATER**

exhaustion, but only if there is a strong showing both of the inadequacy of the prescribed procedure and of impending harm."

*Washington*, 925 F.3d 109, 118 (2d Cir. 2019) (citations, ellipses, and brackets omitted); *see also McCarthy*, 503 U.S. at 147 (providing that a party "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim"); *Bowen v. City of New York*, 476 U.S. 467, 483, 487 (1986) (excusing an administrative exhaustion requirement where the claimants would have been "irreparably injured were the exhaustion requirement [was] enforced against them").

Here, Ms. Curty satisfies all three exceptions to the exhaustion requirement (even though she need only satisfy one exception). Turning first to the undue prejudice exception, Ms. Curty would suffer undue prejudice if she were to exhaust her administrative remedies before seeking federal court intervention. There is an "unreasonable" and "indefinite" timeframe for the BOP to act on Ms. Curty's petition. The BOP "makes a motion under . . . [§] 3582(c)(1)(A) only after review of the request by the Warden, the General Counsel, and either the Medical Director for medical referrals or the Assistant Director, Correctional Programs Division for non-medical referrals, and with the approval of the Director, Bureau of Prisons." 28 C.F.R. § 571.62(a).[2] Thus, the BOP process will not move quickly enough to afford Ms. Curty adequate relief.

---

[2] Section 571.62(a) further provides the following:

(1) The Warden shall promptly review a request for consideration under [§] 3582(c)(1)(A). If the Warden, upon an investigation of the request determines that the request warrants approval, the Warden shall refer the matter in writing with recommendation to the Office of General Counsel.

(2) If the General Counsel determines that the request warrants approval, the General Counsel shall solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending upon the nature of the basis of the request. The General Counsel will solicit the opinion of the United States Attorney in the district in which the inmate was sentenced. With these opinions, the General Counsel shall forward the entire matter to the Director, Bureau of Prisons, for final decision, subject to the general supervision and direction of the Attorney General and Deputy Attorney General.

(3) . . . If the Director, Bureau of Prisons, grants a request under 18 U.S.C. 3582(c)(1)(A), the Director will contact the U.S. Attorney in the district in which the inmate was sentenced regarding moving the sentencing court on behalf of the Director of the Bureau of Prisons to reduce the inmate's term of imprisonment to time served.

28 C.F.R. § 571.62(a)(1)–(3).

Moreover, any further delay from the BOP will most likely irreparably harm Ms. Curty. As discussed in more detail above, Ms. Curty's health is suffering due to her continued imprisonment and the BOP" has shown, both at the medical center where she was incarcerated, and at the halfway house where she is living now, ███████████████████████ ███████████████

Because numerous BOP officials must act on Ms. Curty's petition and because Ms. Curty's health, as well as her children health has already greatly deteriorated -as a result of her inconsistent insulin regimen, Ms. Curty's eyesight deteriorated, and her glucose levels are at a harmful level day in and day out. Ms. Curty also satisfies the futility and inadequate- relief exceptions to the exhaustion requirement. *See Washington*, 925 F.3d at 120–21 ("[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate.").

In *Mathews v. Eldridge*, the Supreme Court held that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." 424 U.S. 319, 330 (1976). "That reasoning explains the Second Circuit's holding [in *Washington*] that even statutory exhaustion requirements are 'not absolute.'" *United States v. Perez*, No. 17-cr-513, 2020 WL 1546422, at 2 & n.2 (S.D.N.Y. Apr. 1, 2020) (Torres, J.). Ms. Curty "has presented his claim to the BOP, so the situation here is analogous." *Id.* At n.2 (record citation omitted).

In *United States v. Hart*, No. 17-cr-248 (S.D.N.Y.), the Government acknowledges that the Second Circuit in *Washington* stated that exceptions to the exhaustion requirement are applicable to cases where exhaustion is mandated by statute. *Hart*, No. 17-cr-248, ECF Doc. 248 (Gov't Resp.) at 2. But the Government then goes on to argue that that statement by the Second Circuit is "not accurate." *Id.* at 2–3. For obvious reasons, this Court should follow the Second Circuit's statement in *Washington* that undue prejudice could excuse the exhaustion requirement rather than adopt the Government's argument that the Second Circuit had made an inaccurate statement.

In *Hart*, the Government further argues the following:

*Perez* . . . erred in relying on *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976), for the proposition that a court may consider claims notwithstanding a party's failure to satisfy statutory exhaustion requirements. *See Perez*, 2020 WL 1546422, at *2 n.2. *Mathews* held that the complex statutory exhaustion requirement at issue had been *satisfied*, not that it could be ignored. *See* 424 U.S. at 329 (petitioner "fulfilled" statute's "crucial prerequisite" when "he specifically presented the claim that his benefits should not be terminated" through his answers to a state agency questionnaire, and his claim "was denied by the state agency and its decision was accepted by the SSA [Social Security Administration]").

*Hart*, No. 17-cr-248, ECF Doc. 248 at 3 n.2. But like in *Matthews*, Ms. Curty has satisfied § 3582(c)(1)(A)'s "crucial prerequisite" by filing a § 3582(c)(1)(A) petition with the

# AGNIFILO
# INTRATER

BOP. *See Perez*, 2020 WL 1546422, at 2 n.2 ("Perez has presented his claim to the BOP, so the situation here is analogous [to that in *Mathews*]." (record citation omitted)).

In *Hart* (No. 17-cr-248, ECF Doc. 247 (Apr. 3, 2020, Order) at 1–2), the court directed the Government to discuss *United States v. Monzon* and *United States v. Bolino*, wherein the district courts denied motions for compassionate release based on the defendants' failures to exhaust their BOP remedies. *See Monzon*, No. 99-cr-157, 2020 WL 550220, at 1–2 (S.D.N.Y. Feb. 4, 2020); *Bolino*, No. 06-cr-806, 2020 WL 32461 at 1–2 (E.D.N.Y. Jan. 2, 2020). But the defendants in *Monzon* and *Bolino* did not argue that they had satisfied any of the exceptions to the exhaustion requirement. *See Monzon*, No. 99-cr-157, ECF Doc. 474-1 (Compassionate Release Mot.); *Bolino*, No. 06-cr-806, ECF Docs. 520 (Compassionate Release Mot.), 522 (Compassionate Release Reply).[3] Thus, the *Monzon* and *Bolino* opinions are inapposite to this case, where Ms. Curty is invoking the exceptions to the exhaustion requirement.

If this Court finds that the exhaustion requirement presently precludes the granting of compassionate release, it is respectfully requested that this Court issue a recommendation to the BOP that it grant Ms. Curty's petition as soon as possible. *See United States v. Knox*, No. 15-cr-445, 2020 WL 1487272, at 2 (S.D.N.Y. Mar. 27, 2020) (Engelmayer, J.) (granting the defendant's "request for a recommendation that BOP allow him to serve the remainder of his sentence with 1 month in a halfway house and 6 months in home confinement"); *United States v. Hernandez*, No. 19-cr-834 (S.D.N.Y.) (Engelmayer, J.), ECF doc. 440 (Mar. 25, 2020 Order) ("The Court . . . state[s] the following, as it may be instructive guidance to the Bureau of Prisons in considering an application by Mr. Hernandez for release on home confinement. . . . Had the Court known that sentencing Mr. Hernandez to serve the final four months of his term in a federal prison would have exposed him to a heightened health risk [from the coronavirus], the Court would have directed that these four months be served instead in home confinement.").

2.  Ms. Curty's Serious Medical Issues Present Extraordinary and Compelling Reasons for Granting Compassionate Release to Ms. Curty

As mentioned in detail above, Ms. Curty's health is gravely suffering due to her continued imprisonment and the BOP has shown, both at the FMC – Carswell, where she was originally incarcerated, and at the halfway house where she is now, that they are unable to provide the proper treatment ███████████████████████████

Additionally, Ms. Curty's family is suffering from her continued imprisonment. Since being incarcerated, Ms. Curty's children have suffered.████████████████████████ ███████████████████████████████████

---

[3] Indeed, the defendant in *Monzon* did not even ask "ma[k]e a request to the warden of his facility to make a motion on his behalf." 2020 WL 550220, at 1.

# AGNIFILO
# INTRATER

3.  Ms. Curty is Not a Danger to Others

Ms. Curty "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* U.S.S.G. § 1B1.13(2)[4]. This was already the opinion of the Court, which at the time of sentencing "strongly recommend[ed] designation to a minimum-security prison camp" to the BOP. (*Id.*) Although Ms. Curty's offense conduct was serious, she is a first-time offender whose offense conduct did not involve "a crime of violence, a violation of [18 U.S.C. §] 1591 [certain sex trafficking crimes], a Federal crime of terrorism, . . . a minor victim[,] or a controlled substance, firearm, explosive, or destructive device." (*See* PSR ¶¶ 127– 32); *see* 18.U.S.C. § 3142(g)(1), (3)(A)–(B).  Moreover, Ms. Curty has no "history relating to drug or alcohol abuse." (*See* PSR ¶ 146); *see* 18.U.S.C. § 3142(g)(3)(A). ████████████████████
████████████████████████████████████

4.  Releasing Ms. Curty on Compassionate Release Is Not Inconsistent With Other Sentences in This Scheme

Finally, requesting that Ms. Curty be released after nearly five months of imprisonment is consistent with the other sentences in this case. *First*, the Court intended for Ms. Curty to serve her sentence at a camp close to home. Instead, Ms. Curty served at a medical facility with nearly no outside time, thousands of miles away from her family, for four months. That imprisonment is objectionably more difficult than the one the Court was envisioning when the Court announced her sentence. (*See* ECF 40.) *Second*, several related defendants in this scheme (including those against whom she cooperated) received sentences that would equate to five months of harsh imprisonment. For example, this Court sentenced Christopher Frusci to 12 months – split between six months of home confinement and six months of prison and Scott Shekitka to 3 years of probation with a condition of 6 months home incarceration due to his significant medical issues.

*Third*, as recently as last week, this Court has ordered the sentences of two related defendants in the scheme, against whom Ms. Curty cooperated, to be released to home confinement. Specifically this Court ordered that Ms. Nichols and Ms. Zaretsky, who caused significant higher loss amounts (at least $35 million compared to $8 million) to serve the remainder of their sentences on home confinement after serving five months of incarceration at a camp. (*See U.S. v. Nichols, et al.*, 6/28/24 Order.)

---

[4] *See also* Matthew J. Akiyama, M.D., Anne C. Spaulding, M.D., & Josiah D. Rich, M.D., *Flattening the Curve for Incarcerated Populations—COVID-19 in Jails and Prisons*, New Eng. J. Med. (Apr. 2, 2020), *available at* https://www.nejm.org/doi/full/10.1056/NEJMp2005687?query=RP (encouraging the release of "as many people as possible, focusing on those who are least likely to commit additional crimes, but also on the elderly and infirm").

# AGNIFILO
# INTRATER

---

**E.** **In The Alternative, We Ask the Court to Modify Ms. Curty's Sentence and Allow Her to Serve the Remaining Sentence on Home Confinement**

In the alternative, we ask that the Court modify Ms. Curty's sentence, as the Court did for Ms. Nichols and Ms. Zaretsky to be split half imprisonment, and half on home incarceration pursuant to the Second Chance Act, codified at 18 U.S.C. § 3624(c). Therefore, with Ms. Curty having already served nearly five months in BOP custody, she could be released to home confinement for the remaining six months of her sentence

**F.** **Conclusion**

Accordingly, we respectfully request the Court to grant Ms. Curty compassionate release. In the alternative, we ask the Court to modify Ms. Curty's sentence, and allow her to serve the remainder of her sentence on home confinement. The Government does not oppose this request.

Thank you for your consideration.

Respectfully submitted,

Marc Agnifilo

cc :   AUSA Jordann Conaboy (via email)